UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Roscoe Chambers, ) | | |
| Petitioner, ) | | |
| ) | | No. 20 CV 50302 |
| v. ) | | Judge Iain D. Johnston |
| ) | | |
| Andrew Ciolli,[1] ) | | |
| Respondent. ) | | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Roscoe Chambers seeks restoration of 27 days of good conduct time that he lost for allegedly assaulting a corrections officer. For the reasons that follow, his petition [1] is denied.

**BACKGROUND**

Mr. Chambers is an inmate at AUSP Thomson. He is serving a 360-month sentence after being convicted of multiple federal drug offenses in the Southern District of Iowa. *See United States v. Roscoe Chambers*, Case No. 12 CR 71 (S.D. Iowa). According to the Bureau of Prisons website, his projected release date is September 15, 2038.

Mr. Chambers lost 27 days good conduct time after an incident on November 22, 2019, at his current facility, AUSP Thomson. According to a Bureau of Prisons incident report, a corrections officer returned Mr. Chambers to his cell from the shower. Dkt. 11 at 151. The officer held Mr. Chambers restraints while radioing for the door to his cell to be closed. *Id.* As the door closed, Mr. Chambers stuck out his leg to prevent it from closing, and lifted his body and hands through the tray slot in the door, which pinned the officer's hand and fingers in the slot. *Id.* The officer called for help. *Id.* An officer who responded used "OC" (or pepper spray) on Mr. Chambers, which caused Mr. Chambers to release the officer's hand and let the cell door close. *Id.* The incident left the corrections officer's hand injured. *Id.*

On November 22, 2019, Lieutenant Murillo delivered a copy of the incident report to Mr. Chambers. *Id.* at 151. That same day Lt. Murillo investigated the incident and reported that Mr. Chambers had stated, "I didn't assault[] him, this is a lie[]." *Id.* at 153. In his report, Lt. Murillo concluded that the evidence he had gathered supported charging Mr. Chambers with assault, Prohibited Act Code 224, and he referred the matter to the Unit Disciplinary Committee. *Id.* Officer D. Boyer conducted the UDC hearing on November 22, 2019. *Id.* at 151. During the hearing, Mr. Chambers stated that camera footage of the incident would reveal he was the one who had been assaulted by the corrections officer, who twisted his handcuffs. *Id.* Officer Boyer referred the matter to the Disciplinary Hearing Office. *Id.* DHO Officer A. Fitcher held Mr.

---

[1] The warden of AUSP Thomson is now Andrew Ciolli. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as the defendant to this suit.

Chambers' disciplinary hearing on January 13, 2020. *Id.* at 150. In a written decision, the disciplinary officer found that based on the greater weight of the evidence, Mr. Chambers had committed the prohibited act of assault and sanctioned him as follows: 27 days loss of good conduct time, 30 days of disciplinary segregation (suspended for 180 days pending clear conduct), and 120 days loss of e-mail, phone and commissary privileges. *Id.* at 149-50.

In a petition filed under 28 U.S.C. § 2241, Mr. Chambers seeks the return of his 27 days of good conduct time. In support, he argues that he was denied good time credits without due process because (1) he was never given fair notice of what conduct is prohibited, a violation of Bureau of Prisons Program Statement 5290.14; (2) staff presented false evidence at his disciplinary hearing and camera footage shows that he was the one assaulted; (3) his disciplinary hearing officer infringed his right to present evidence by refusing to review the camera footage; and (4) his UDC hearing was conducted by just one staff member rather than the required two staff members. The petition is now fully briefed.

## ANALYSIS

Persons in the custody of the Bureau of Prisons have a liberty interest in good conduct time, and can challenge the loss of good conduct time by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

The disciplinary decision will be upheld as long as it is supported by "some evidence in the record," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends."). On habeas review, the court does not reweigh the evidence or determine credibility. *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Rather, the court merely looks to whether there is *any* evidence in the record supporting the disciplinary decision. *See Henderson v. U.S. Parole Com'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (a court can overturn a disciplinary decision only if no reasonable adjudicator could have found the inmate guilty of the offense based on the evidence presented).

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court, but the requirement is not jurisdictional and so is waived if not raised by the respondent. *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). The respondent concedes that Mr. Chambers exhausted his administrative remedies. Dkt. 11 at 5.

Before focusing on the four ways in which Mr. Chambers contends he was denied due process, the Court first addresses an argument he raises in his reply brief that the respondent's

counsel violated 28 C.F.R. § 50.15 by responding to his petition, and so the response should be disregarded. Reply [12] at 1-2. Specifically, he contends that the respondent's counsel did not obtain authorization from the United States Attorney General to appear for the respondent. *Id.* In fact, the regulation allows the Attorney General "or his designee" to decide whether to represent a federal employee. *See* 28 C.F.R. § 50.15. Other than Mr. Chambers' bald assertion, he points to no evidence that respondent's counsel's appearance is unauthorized. Nor does the Court have reason to believe that counsel appeared without authorization, or to address the argument further.

1. **Fair Notice**

Mr. Chambers contends that he was denied fair notice of what conduct constitutes a disciplinary violation because he never received a rule book at AUSP Thomson, which he contends is required under the Bureau of Prisons' Admission and Orientation Program, *see* Bureau of Prisons Program Statement 5290.14. Mr. Chambers does not specify what part of 5209.14 requires that he be given a rule book by each new institution to which he is relocated, nor does he point to authority establishing that due process requires each institution to give him a rule book. AUSP Thomson is not Mr. Chambers' first institution, *see* Dkt. 11 at 34-72 (grievances Mr. Chambers filed at each of his institutions), and the Bureau of Prisons' Inmate Discipline Program, which identifies assault as a prohibited act, presumably applies at all facilities, *see* Bureau of Prisons Program Statement 5270.09 ("Inmate Discipline Program"), Table 1 Prohibited Acts and Available Sanctions #224. Moreover, Mr. Chambers was previously disciplined and lost good conduct time on multiple occasions in 2016-18, either for assault or threatening bodily harm, and so cannot seriously contend that he was unaware that assaulting others was prohibited. *See* Dkt. 11 at 74-82 (Mr. Chambers' disciplinary history).

2. **Staff Presented False Evidence**

Mr. Chambers contends that he was denied due process because the disciplinary hearing officer's decision rested on false evidence. Specifically, he contends that his staff representative's description of the camera footage was a lie because the footage clearly shows that he was the one assaulted. Petition [1] at 6. According to the disciplinary hearing officer's report, Dr. McCrea served as Mr. Chambers' staff representative for the hearing and offered the following statement regarding the camera footage he had viewed: "He asked me to watch the video and the video summarized exactly what the incident report said happened." Dkt. 11 at 148. But the video was not the only evidence considered by the hearing officer. The hearing officer also considered the incident report itself, a staff injury assessment reporting the injuries the corrections officer suffered during the incident, and statements from two other officers who witnessed the incident and reported that they saw Mr. Chambers refusing to release the corrections officer's hand through the door slot as it attempted to close. *Id.* at 149. Against that evidence, the disciplinary hearing officer balanced evidence from Mr. Chambers himself, including his statement at the hearing that, "It didn't happen. The whole thing was fabricated," and similar statements Mr. Chambers made to the investigating officer and during the UDC hearing that he never assaulted the officer, accusations that he did are a lie, and that the officer assaulted him. *Id.* at 148-49. This Court cannot determine credibility or reweigh the evidence, and must uphold the disciplinary decision as long as it is supported by some evidence in the

record. *See Scruggs*, 485 F.3d at 941; *Meeks*, 81 F.3d at 720. Because some evidence supports the disciplinary hearing officer's decision, Mr. Chambers has not established a due process violation based on insufficiency of the evidence.

### 3. Hearing Officer Refused to Consider Camera Footage

Next, Mr. Chambers contends that he was denied due process because the hearing officer never viewed the camera footage. Mr. Chambers has cited to no authority holding that due process requires a hearing officer to view camera footage him- or herself. The hearing officer relied on a description of the camera footage offered by Mr. Chambers' own staff representative, and thus had some evidence of what the footage depicted. *See Estrada v. Holilnka*, 420 Fed. Appx. 602, 604 (7th Cir. 2011) ("Even without watching the video, the hearing officer had more than a 'modicum' of evidence to support her decision, and that was all that was required to meet the 'lenient' evidentiary standard in a prison disciplinary hearing."). Therefore, the fact that the hearing officer did not view the camera footage did not violate Mr. Chambers' due process rights.

### 4. UDC Hearing

Finally, Mr. Chambers contends that his due process rights were violated because his UDC hearing was conducted by one staff member, rather than the two or more required under Inmate Discipline Program § 541.7(b). Under § 541.7(b), a UDC "ordinarily" consists of two or more staff. However, "[o]nly one unit staff member is required to hold an initial review when the incident report is required by policy to be referred to the DHO." *Id.* § 541.7(b). Incidents involving assault are among the High severity prohibited acts. *See id.*, Table 1 Prohibited Acts and Available Sanctions. As required, the UDC referred Mr. Chambers incident report to the DHO. *See* Dkt. 11 at 151 ¶ 19. Because Mr. Chambers' incident report involved a High severity prohibited act, the UDC hearing was properly conducted by a single staff member.

### CONCLUSION

For the reasons given, Mr. Chambers' petition [1] is denied, and this case is closed. Mr. Chambers is advised that this is a final decision ending his case in this Court. If he wants to appeal, he must file a notice of appeal with this Court within 60 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Mr. Chambers need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

- 5 -

      To the extent one is required, the Court declines to issue a certificate of appealability. *See* Rule 11 of the Rules Governing § 2254 Cases. Mr. Chambers cannot show that reasonable jurists would debate, much less disagree, with this Court's resolution of his § 2241 petition. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2), and *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Date: September 15, 2021      By: _____
                                                Iain D. Johnston
                                                United States District Judge